# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| Paula Bennett, | : | Case No. 3: 08 CV 2636 |
| Plaintiff, | : | |
| v. | | MAGISTRATE'S REPORT AND |
| | : | RECOMMENDATION |
| J-F Enterprises, Incorporated, | | |
| | : | |
| Defendant. | | |

This employment discrimination case, filed pursuant Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e(a)(1)) and the OHIO CIVIL RIGHTS ACT (OHIO REV. CODE § 4112), has been referred to the undersigned Magistrate for report and recommendation. Pending is Defendant's Motion for Summary Judgment (Docket No. 32), Plaintiff's Opposition (Docket No. 39) and Defendant's Reply (Docket No. 43). For the reasons that follow, the Magistrate recommends that the Motion for Summary Judgment be granted.

## JURISDICTION

This Court has jurisdiction over Plaintiff's claims pursuant to 29 U. S. C. §§ 1331 and 1343.

Venue is proper in the Northern District of Ohio under 28 U. S. C. § 1391(b).

## THE PARTIES

Plaintiff is an African American woman who at the relevant time of this case resided in Toledo, Ohio (Docket No. 1, p. 2).

Defendant J-F Enterprises (J-F) owns and operates numerous Barney's Convenience Stores. Barney's serves the greater Toledo market (Docket No. 39, p. 1).

## FACTUAL BACKGROUND

Plaintiff was employed by the Defendant on two separate occasions. Initially Plaintiff worked for Defendant J-F as a convenience store cashier from August 26 to September 12, 2006. Defendant J-F terminated Plaintiff for poor attendance. Plaintiff then worked for another gas station. Approximately three months later, Defendant J-F re-hired Plaintiff as an employee when it purchased the gas station where Plaintiff was employed (Docket No. 32, pp. 5 of 23 - 6 of 23). During this second period of employment, Plaintiff was an at-will employee for Defendant J-F from December 18, 2006 to June 12, 2007 (Docket No. 1, Â 4, Docket No. 32, pp. 5 of 23  - 6 of 23; Docket No. 32, Exhibit 1, ¶ 5).

**Plaintiff's Employment and Disciplinary History**

At the time Defendant re-hired Plaintiff, she worked at Defendant's Central Avenue- 475 location and was supervised by store manager Oliver Turner (Docket No. 32, p. 6 of 23). Plaintiff was verbally warned and/or counseled for a number of infractions that occurred in January and February of 2007 including:

|     |                   |                                                                                             |
| --- | ----------------- | ------------------------------------------------------------------------------------------- |
| (1) | January 3, 2007   | Arriving forty-five minutes late for work.                                                  |
| (2) | January 8, 2007   | Failing to complete checklist and outside tasks and sitting on the counter in front of customers. |
| (3) | January 9, 2007   | Arriving fifty-five minutes late for work.                                                  |
| (4) | February 15, 2007 | Shorting the lottery cash.                                                                  |

(Docket 32, p.6 of 23).

Upon her request, Plaintiff was transferred to another gas station owned by Defendant on April 2, 2007 so she could obtain additional hours not offered at the previous location (Docket 32, p. 6 of 23). At the transfer location, West Central Avenue Station, Plaintiff was supervised by Store Manager Wendy Burkes and Assistant Store Manager Joy Dwyer (Docket No. 32, p. 2). Plaintiff contends that the employees, including management, at the new location resented her for taking hours that otherwise would have belonged to them and consequently they did not speak to her (Docket No. 33, Exhibit 1, p. 83). Between April and May, Plaintiff was counseled for various infractions at the West Central location including:

|     |                |                                                   |
| --- | -------------- | ------------------------------------------------- |
| (1) | April 8, 2007  | Customer complaints that she was on her cellphone. |
| (2) | May 3, 2007    | Arriving forty minutes late work.                  |
| (3) | May 6, 2007    | Over baking Subway bread.                          |
| (4) | May 17, 2007   | Under baking Subway bread.                         |
| (5) | May 25, 2007   | Arriving twelve minutes late for work.             |
| (6) | May 26, 2007   | Arriving eleven minutes late for work.             |

(Docket No. 32, p. 3).

Additionally on May 5, 2007, all employees at the Central Avenue location were given written warnings regarding performing job duties and working together as a team (Docket No. 32, p. 3). Plaintiff admitted arriving late on May 25 and May 26, 2007 but she did not admit, deny or remember other incidences of tardiness (Docket No. 33, Exhibit 1, pp. 87-89). Plaintiff acknowledged that one

3

of her responsibilities was to arrive at work on time (Docket No. 32, p. 4). Calling in advance of arriving late for work would only result in a reduction in pay for the time missed, not disciplinary action (Docket No. 39, p. 3). Plaintiff maintains that because she called to inform her managers that she would be late, she should not be disciplined for tardiness (Docket No. 33, Exhibit 1, p. 89).

**Statement's Attributed to Plaintiff's Managers**

In May 2007, Plaintiff had a conversation with a co-worker, Michelle Morris, during which Ms. Morris told her that Ms. Burkes and Ms. Dwyer confided in her that Plaintiff did not belong there, her kind did not belong there, that she was lazy, watch her (Docket No. 33, Exhibit 1, pp. 96, 98-99). Fellow cashiers Lucy and Nicole confirmed that Ms. Burkes made the same representations about Plaintiff (Docket No. 33, Exhibit 1, pp. 103, 104). Plaintiff is unaware of when Ms. Burkes and Ms. Dwyer made these statements or when they were made to Ms. Morris, Lucy and Nicole (Docket No. 39, p. 2). Plaintiff construed these statements to be race based (Docket No. 33, Exhibit 1, p. 97). Plaintiff discussed Ms. Morris' accusations with Ms. Burkes. Ms. Burkes denied making the statements (Docket No. 33, p. 101).

On May 29, 2007, Plaintiff reported to the Defendant's headquarters in Perrysburg, Ohio, to meet with Defendant's recruiter, Kathy Sutton, and District Manager, Jim Sutphin (Docket No. 39, p. 5). Plaintiff complained in the meeting that she was being disciplined unfairly and harassed (Docket No. 33, Exhibit 1, p. 111). Plaintiff believed that she had expressed concern about "Wendy and Joy's comments" (Docket No. 33, Exhibit 1, p. 113). She did not remember alleging that the comments were race based (Docket No. 33, Exhibit 1, p. 114). When the meeting concluded, Mr. Sutphin indicated he would discuss the disciplinary issues with Ms. Burke after she returned from vacation on June 17, 2007

4

(Docket No. 39, p. 5).

**The June 9, 2007 Incident**

Because Defendant J-F's gas stations had been targeted for theft and employees robbed at gunpoint, Defendant J-F had strict cash handling rules designed to ensure the safety of its employees and minimize the economic impact of theft. Plaintiff was trained on cash handling procedures and received a copy of Defendant's Cash Level and Cashier Accountability Policy (Docket No. 32, p. 6). Plaintiff signed a job description that required all convenience store cashiers to "make timely deposits," "count each deposit accurately," "record each drop" and "complete an accurate end-of-shift checkout procedure" (Docket No. 32, p. 7).

On June 9, 2007, Plaintiff was scheduled to work second shift from 2:00 to 10:00 p.m. with co-worker Aaron Camacho (Docket No. 32, p. 5). Plaintiff claims that she "punched in" at 2:00 P.M. (Docket No. 33, Exhibit 1, p. 117). Plaintiff counted her money at approximately 8:00 P.M. and dropped it all, except for $50, in the safe (Docket No. 33, Exhibit 1, p. 118). At approximately 8:30 p.m. and 9:30 p.m., the gas station's computers and cash registers were malfunctioning (Docket No. 32, p. 5). Plaintiff and Camacho tried to call managers for help but could not reach them (Docket No. 39, p. 4). Plaintiff claimed that the computers were still down when she clocked out. The computer began functioning normally almost immediately after she punched out and prior to her leaving the premises. The second shift reports were printed and the cash drawers were removed from the registers and Plaintiff was instructed to count down her drawer. Plaintiff acknowledged that it was not standard procedure to abandon the cash drawer, leaving it unsecured and out of the register; however, she was already off the clock. Consequently, she left to go to her other job (Docket No. 33, Exhibit 1, pp. 121,

127-129).

Vice President Roy Clark directed that Plaintiff be terminated effective June 12, 2007, for failing to secure her cash drawer (Docket No. 32, Exhibit 2, ¶ 2). When Plaintiff learned of Clark's decision, she met with him to request that he reconsider the decision terminating her employment (Docket No. 32, Exhibit 2, ¶ 4). At the meeting Plaintiff did not complain of race discrimination or harassment by her superiors because of race (Docket No. 32, Exhibit 2, ¶ 5). The Human Research Manager Shannon Ayers was directed by Mr. Clark to interview all employees present at the location where Plaintiff was working on June 9, 2007, to corroborate the facts (Docket No. 32, Exhibit 2, ¶ 4). Because the investigation confirmed that Plaintiff left the contents of her cash drawer unsecured on June 9, 2007, Mr. Clark affirmed his decision to terminate Plaintiff (Docket No. 32, Exhibit 2, ¶ 4).

**Administrative Review of Plaintiff's Claims.**

Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC)/ Equal Employment Opportunity Commission (EEOC) on June 15, 2007, alleging that she was discriminated against and harassed because of her race (Docket No. 32, p. 8). After conducting an investigation, OCRC issued a determination, finding that it was not probable that defendant discriminated against or harassed Plaintiff because of her race. The EEOC adopted OCRC's findings on August 6, 2008 (Docket No. 3).

**SUMMARY JUDGMENT STANDARD**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Averill v. Gleaner Life Insurance Society*, 626 F. Supp.2d 756, 761 (N. D.

Ohio 2009 (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986)). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* (*citing Celotex*, 106 S. Ct. at 2552-2553). The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id*. (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2511 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. *Id*. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1355 (1986)). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Id.* (*citing Celotex, supra,* 106 S. Ct. at 2553).

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor. *Id.* (*citing Eastman Kodak Company v. Image Technical Services, Incorporated,* 112 S. Ct. 2072, 2076 (1992)). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Id.* (*citing Celotex, supra,* 106 S. Ct. 2552).

## **DISCUSSION**

The allegations in Plaintiff's Amended Complaint are twofold. First, she alleges race based harassment and hostile work environment. Second, Plaintiff alleges wrongful discharge based on race in violation of OHIO REV. CODE § 4112. 02. Defendant contends that Plaintiff cannot make a prima facie case for a racially hostile work environment and harassment since the allegations are not severe or pervasive enough to rise to the level of a racially hostile work environment. Defendant further contends that Plaintiff cannot make a prima facie case for wrongful discharge based on race since, *inter alia*, she cannot show that she was replaced by or treated less favorably than a person outside of the protected class.

**Harassment and Hostile Work Environment**

It is unlawful for an employer to discharge any individual, or otherwise discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race. 42 U.S.C. § 2000e-2(a)(1) (LexisNexis 2010). Ohio's civil rights statutes also makes it unlawful for an employer to discriminate on the basis of race. *See* OHIO REV. CODE ANN. § 4112 (LexisNexis 2010). This Court shall consider Plaintiff's federal and state law discrimination claims under the Title VII framework because Ohio's requirements are the same as under federal law. *See Carter v. University of Toledo*, 349 F. 3d 269, 272-273 (6th Cir. 2003) (*citing Ohio Civil Rights Commân v. Ingram*, 69 Ohio St. 3d 89, 630 N.E.2d 669,674 (1994)).

Title VII offers employees protection from a workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (*citing Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367, 370 (1993)). Conduct that

is not severe or pervasive enough to create an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation. *Id.* (*citing Harris* 114 S. Ct. at 370). Conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard the environment as abusive. *Id.* (citation and quotation marks omitted).

To defeat a motion for summary judgment in a discrimination case, a plaintiff must present direct or circumstantial evidence of discrimination. *Id.* (*citing DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)). Direct evidence is evidence that, if believed, dictates a finding, with no need to draw inferences, that an unlawful discrimination was at least a motivating factor in the employer's action. *Id.* (*citing Amini v. Oberlin College,* 440 F.3d 350, 359 (6th Cir. 2006)). Where a plaintiff relies upon circumstantial evidence, the *McDonnell Douglas* burden shifting framework applies. *Id* (*citing McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817, 1824 (1973); *Texas Dep't of Cmty. Affairs v. Burdine,* 101 S. Ct. 1089, 1093 (1981). Direct evidence does not require the fact finder to draw any inferences to reach that conclusion. *Id.* (*citing Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000). Evidence of discrimination is not considered direct evidence unless a racial motivation is explicitly expressed. Id.

To establish a prima facie case of a racially hostile work environment, a plaintiff must demonstrate that (i) s/he is a member of a protected class; (ii) s/he was subjected to unwelcome racial harassment; (iii) the harassment was based on race; (iv) the harassment unreasonably interfered with his/her work performance by creating an intimidating, hostile or offensive work environment; and (v)

9

the employer is liable. *Barrett*, *supra*, 556 F.3d at 515 (*citing Hafford v. Seidner*, 183 F. 3d 506, 512 (6th Cir. 1999)). To assess the fourth prong of an asserted prima facie case, the court must examine the totality of the circumstances. *Id.* (*citing Harris*, *supra*, 114 S. Ct. at 371). In doing so the court must consider the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id*. (*citing Harris, supra*, 114 S. Ct. at 371). The Supreme Court has made clear that the conduct must be extreme to amount to a change in the terms and conditions of employment. *Id.* (*citing Faragher v. City of Boca Raton*, 118 S. Ct. 2275, 2284 (1998)). Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of the employment. *Id*.

In the case at bar, Plaintiff bases her racial harassment claim on comments made by her supervisors, unfair discipline for workplace infractions and the fact that she is the only African American employee at the gas station. These facts, once applied to the elements necessary to establish a prima facie case of racial harassment, do not amount to an actionable claim. Plaintiff satisfies the first element as she is an African American female and therefore a member of a protected class. However, Petitioner failed to present direct or circumstantial evidence of discrimination. The comments attributed to the supervisors offer no indication that they were in reference to Plaintiff' race. Even when assuming the comments were racially charged, calling Plaintiff lazy, stating her kind does not belong in this store and that she should be watched, does not reach the threshold of severity necessary to create a hostile work environment. Similarly, these comments lack the pervasiveness to alter the conditions of Plaintiff's employment and unreasonably interfere with Plaintiff's work performance. At best, these statements constitute careless comments made in one isolated incident during the course of Plaintiff's

employment.

With regard to the unfair discipline, Plaintiff admits all but two of the infractions for which she was counseled. She states that she was not at fault for over baking the Subway bread on May 6 and under baking it on a May 17. For each of these violations, Plaintiff received verbal warnings. When testifying, Plaintiff uses the terms unfair discipline and harassment interchangeably (Docket No. 32, p. 5). Nevertheless, Plaintiff has offered no evidence that the discipline she received was based on her race. Her assertions and speculations are not sufficient to defeat the summary judgment motion.

Assuming *arguendo*, that the supervisor's conduct satisfied the second and third elements of the claim and Plaintiff was subjected to harassment based on her race, the fourth element remains unsatisfied given the facts of the case. The fourth element stipulates that the harassment must have unreasonably interfered with her work performance by creating an intimidating, hostile or offensive work environment. In order to satisfy this element, we must assess the totality of the circumstances to determine if Plaintiff's treatment was extreme to the point that it unreasonably interfered with her work performance. Two instances of discipline and a few vague, offhand statements targeting Plaintiff do not constitute extreme treatment. Plaintiff did not assert that the verbal warnings for over baking and under baking the bread were severe, physically threatening or humiliating to the degree required to affect her work performance. Similarly, there is no indication that Plaintiff's reaction to the alleged harassing comments affected her work performance. Even when assumptions are construed in her favor, there is no concrete evidence that the elements of a harassment claim co-exist. Clearly, Plaintiff has failed to make a prima facie case for hostile work environment and race based harassment.

**Wrongful Discharge Based on Race**

Plaintiff was discharged following the June 9, 2007, incident in which she failed to count out and store her cash drawer after the gas station's computer system went down at the end of her shift. Plaintiff contends that the discriminatory *animus* of her supervisors was a contributing factor behind this employment decision. This claim is alleged under OHIO REV. CODE § 4112.02, the scope of which is identical to Title VII. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ Rights Comm*, 66 Ohio St. 2d. 192, 421 N. E. 2d 128 (1981). The additional language in the Ohio statute does not provide any additional protection than that granted in Title VII. *Id.* The state law mirrors the reach of the federal legislation and therefore the *McDonnell-Douglas* analysis is applicable to the employment discrimination claim at bar. *Id.*

The application of the *McDonnell-Douglas* burden shifting analysis is required when no direct evidence exists to determine whether Plaintiff can succeed on this claim. *Id.* The *McDonnell-Douglas* analysis involves a burden shifting framework, placing the initial burden on the complainant to establish a prima facie case of racial discrimination. *McDonnell-Douglas Corp. v. Green*, 93 S. Ct. 1817 (1973). The prima facie case may be established by showing (i) that the complainant belongs to a protected class; (ii) that she suffered an adverse employment action; (iii) that she was qualified for the position; and (iv) that she was replaced or treated less favorably than a person outside the protected class. *Clay v. UPS*, 501 F. 3d 695, 703 (6th Cir. 2007). The fourth prong requires that Plaintiff show that the person treated more favorably was similarly situated to Plaintiff in all relevant aspects. *Id.* (*citing Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)). If these elements are established, the burden then must shift to the employer to articulate some legitimate, non-discriminatory reason for the employment decision. *Id.*

Plaintiff is then entitled to a full and fair opportunity to demonstrate by competent evidence that the stated, presumptively valid reason for the rejection was in fact a pretextual cover up for racially discriminatory decision. *McDonnell-Douglas Corp.*, *supra*, 93 S. Ct. at 1825. This can be done by showing that the proffered reason (i) has no basis in fact, (ii) did not actually motivate the defendant's challenged conduct, or (iii) was insufficient to warrant the challenged conduct. *Clay*, 501 F. 3d at 704 (c*iting Dews v. A.B. Dick Co.*, 231 F 3d 1016, 1021 (6th Cir. 2000)).

In the present case, Defendant concedes that three of the four prongs have been established to meet the *McDonnell Douglas* standard. For purposes of this motion, Defendant concedes that Plaintiff is a member of a protected class, suffered an adverse employment action and was qualified for the cashier position (Docket No. 32, p. 10). This leaves the final element, whether Plaintiff was treated less favorably than a person outside the protected class, as the determining factor. This element requires that Plaintiff show that the person treated more favorably was in a situation that was similar in all relevant aspects to that of Plaintiff. Plaintiff compares her case with that of her caucasian co-worker who was not reprimanded or fired when she repeatedly lost funds due to customers illegally driving away without paying for gas. Although both situations pose problems for the store, the relevant aspects of the situations are substantially different and thus do meet the required standard. Furthermore, Plaintiff testified that she was not aware of another situation where an employee left her drawer uncounted and unsecured prior to a shift change. (Docket No. 32, p. 11). Therefore, Plaintiff has not met her burden of proving the fourth prong and the burden shifting analysis need not continue.

## **CONCLUSION**

For the foregoing reasons, the Magistrate recommends that Defendant's Motion for Summary Judgment be granted, the case be dismissed and the reference to the Magistrate terminated.

/s/Vernelis K. Armstrong
United States Magistrate Judge

**NOTICE**

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, as amended on December 1, 2009, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

14