IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Paula Bennett, | Case No. 3:08 CV 2636 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| J-F Enterprises, Inc., | |
| Defendant. | |

**INTRODUCTION**

This is a race discrimination case brought by Plaintiff Paula Bennett, an African-American, against her former employer, Defendant J-F Enterprises, Inc. Plaintiff worked as a cashier for some six months when she was terminated for leaving a cash register unattended at the sales counter, a violation of a company policy. Plaintiff alleges she was terminated unfairly because of her race, and was subjected to a hostile work environment.

Defendant moved for summary judgment (Doc. No. 32), which Plaintiff opposed (Doc. No. 39); Defendant filed a reply (Doc. No. 43). This case was referred to Magistrate Judge Armstrong pursuant to Local Rule 72.2(b)(2) for a Report and Recommendation ("R&R") (Doc. No. 44), which recommends this Court grant Defendant's Motion.

This matter is now before this Court on Plaintiff's Objections to the R&R (Doc. No. 45) and Defendant's response (Doc. No. 46). Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's

findings. For the reasons set forth below, this Court adopts the Magistrate's recommendation to grant Defendant's Motion.

## BACKGROUND

The Magistrate accurately recites the factual background and procedural history of the case, which this Court adopts with the exception of two minor points discussed below.

Briefly, Plaintiff worked at Defendant's West Central Avenue convenience store in Toledo, Ohio, from December 2006 through June 2007. She was supervised by Store Manager Wendy Burkes ("Burkes") and Assistant Store Manager Joy Dwyer ("Dwyer"). In May 2007, co-worker Michelle Morris told Plaintiff that Burkes and Dwyer reportedly described Plaintiff as lazy, told Morris she needed to watch Plaintiff and that "her kind" did not belong at the store. Other co-workers later confirmed Burkes and Dwyer made these statements, which Plaintiff construed as race-based. Although Plaintiff did not ask Dwyer about the comments, she did confront Burkes, who denied making the comments; Plaintiff believed Burkes, whom she never considered racist.

The incident that ultimately led to this litigation, however, occurred the following month on June 9. Plaintiff counted the money in her drawer at about 8:00 PM and placed all but $50 of it in the store safe to minimize the amount of money needed to be counted at the end of her shift. Around 8:30 PM and again at 9:30 PM, the store computers and cash registers malfunctioned. Plaintiff, and co-worker Aaron Camacho ("Camacho") who was working on the same shift, tried to call managers for help, but could not reach them.

After clocking out but prior to Plaintiff leaving, the computers began functioning normally. The second shift reports were printed, the cash drawers were removed from the registers and Plaintiff was instructed to count down her drawer. However, because Plaintiff was already off the clock, she

2

left to go to her other job without counting her drawer. Plaintiff acknowledged that it was not standard procedure to abandon the cash drawer, leaving it unsecured and out of the register (Doc. No. 33-1, Tr. at 126–27).

Vice President Roy Clark ("Clark") learned that Plaintiff failed to secure her cash drawer prior to leaving the store, and consequently terminated her employment. Plaintiff requested that Clark reconsider his decision. Clark directed Human Resources Manager Shannon Ayers ("Ayers") to interview employees at the store to corroborate the facts. She did, confirmed that Plaintiff left the contents of her cash drawer unsecured, and Clark then confirmed his decision to terminate Plaintiff.

## D<span>ISCUSSION</span>

Plaintiff makes three objections to the R&R: (1) it contains factual errors and failed to account for Camacho's declaration; (2) the Magistrate incorrectly concluded that statements allegedly made by Plaintiff's store managers did not create a hostile work environment; and (3) the Magistrate incorrectly found there were no similarly situated employees who were treated differently than Plaintiff. Each objection will be addressed in turn.

**Factual Errors and Omissions in the R&R**

Plaintiff asserts the Magistrate made a factual error when she stated that "Plaintiff admitted arriving late on May 25 and May 26, 2007 but she did not admit, deny or remember other incidences of tardiness" (Docket No. 44, at 3). Plaintiff contends she admitted she was late on May 3, 2007, and believes this may have affected the Magistrate's decision (Doc. No. 45-1, at 2–3).

3

Plaintiff did in fact admit her tardiness on May 3 (Doc. No. 33-1, Tr. at 75).[1] Plaintiff believes the Magistrate's "mis-perception that Plaintiff was not truthful about having been late to work . . . may have become the basis for a determination of Plaintiff's overall veracity on the ultimate issue of alleged race discrimination" (Doc. No. 45-1, at 3). The importance Plaintiff places on this point is greatly exaggerated. Plaintiff does not cite to any portion of the R&R where the Magistrate made a credibility finding adverse to Plaintiff and this Court finds none. The Magistrate was required to take Plaintiff's evidence as true and construe it in a light most favorable to Plaintiff, and there is nothing in the R&R to suggest she failed to do so.

Plaintiff also contends the Magistrate failed to take into consideration the declaration of Plaintiff's former co-worker, Aaron Comacho (Doc. No. 40, at 6–12). Comacho's declaration states that assistant manager Joy Dwyer told Comacho that Plaintiff was "lazy," "different from us," and "should not be working" at the convenience store. Comacho adds that she believed these characterizations were not true and were based on Plaintiff's race (Doc. No. 40, at 6–7). The Magistrate took these particular facts into consideration based on other record evidence (Doc. No. 44, at 10), so the addition of Comacho's declaration on this point does not affect the Magistrate's recommendation. Plaintiff's first objection is overruled.

---

[1] The referenced deposition transcripts and referenced exhibits are available as .pdf documents on CM/ECF but are not consistently paginated. Therefore, citations to deposition transcripts are denoted with the CM/ECF document number and the identifier Tr. followed by the page number of the original deposition transcript (not the .pdf document page number). Citations to other attached materials, including exhibits, are denoted with the CM/ECF document number followed by the page number of the .pdf document.

**Hostile Work Environment**

Plaintiff argues next that the Magistrate erred by finding the statements made about Plaintiff -- including she was "lazy," "different from us," "her kind" did not belong at the store, and that other employees should watch her -- were not pervasive enough to create a hostile work environment.

To establish a *prima facie* case of a racially hostile work environment, a plaintiff must demonstrate that (i) she is a member of a protected class; (ii) she was subjected to unwelcome racial harassment; (iii) the harassment was based on race; (iv) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile or offensive work environment; and (v) the employer is liable. *Barrett v. Whirlpool Corp.,* 556 F.3d 502, 515 (6th Cir. 2009) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

To assess the fourth prong of an asserted *prima facie* case, the court must examine the totality of the circumstances. *Id.* (citing *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993)). In doing so, the Court must consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* The Supreme Court has made clear that the conduct must be extreme to amount to a change in the terms and conditions of employment. *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)). Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of the employment. *Id.*

Plaintiff testified that the only statement she felt was race-based was "her kind doesn't belong here" (Doc. No. 33-1, Tr. at 97). The Magistrate examined this and all other statements made about Plaintiff and found even if all were construed as racially charged, they were not sufficiently pervasive

to warrant relief. Plaintiff claims the Magistrate applied an "unrealistically high" standard on Plaintiff to show pervasiveness, but this Court is satisfied the Magistrate fairly applied the appropriate standard.

The real crux of Plaintiff's objection is that, given all the record evidence, the Magistrate simply came to the wrong conclusion. This Court, however, is convinced otherwise. The statements made about Plaintiff simply do not rise to the level of severity required to make out a *prima facie* case of hostile work environment. Plaintiff found only one statement racially offensive, but there was no frequency to this statement. Moreover, there is no evidence any statement interfered with Plaintiff's ability to perform her job. In fact, Plaintiff confronted Burkes about making the statements, which Burkes denied, and Plaintiff "did not consider Burkes a racist" (Doc. No. 33-1, Tr. at 100–101).

**Wrongful Termination**

Lastly, Plaintiff argues the Magistrate incorrectly found Plaintiff failed to make out a *prima facie* case of wrongful termination. Specifically, the Magistrate determined Plaintiff did not demonstrate that she was treated differently than other similarly situated employees.

The *McDonnell-Douglas* burden shifting analysis applies here, and places the initial burden on Plaintiff to establish a *prima facie* case of racial discrimination. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *prima facie* case may be established by showing (i) that the complainant belongs to a protected class; (ii) that she suffered an adverse employment action; (iii) that she was qualified for the position; and (iv) that she was replaced or treated less favorably than a person outside the protected class. *Clay v. UPS*, 501 F.3d 695, 703 (6th Cir. 2007). Here, Defendant concedes Plaintiff met the first three prongs of the *McDonnell-Douglas* test (Doc. No. 32, at 10).

6

However, the Magistrate concluded Plaintiff failed to meet the fourth prong, which requires that Plaintiff show that the person treated more favorably was similarly situated to Plaintiff in all relevant aspects. *Id*. (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)). To meet this prong, Plaintiff must compare herself to other employees who "'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employers treatment of them for it.'" *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)). This includes demonstrating other employees engaged in acts of "comparable seriousness." *Id.* (quoting *McDonald v. Santa Fe Trans. Co.*, 427 U.S. 273, 283 n.11 (1976)).

Plaintiff compares herself to an employee who failed to secure the license plate numbers of customers who illegally drove away without paying for gas. The Magistrate concluded, and this Court agrees, that the two are not sufficiently similar to meet the standard set forth in *Clay.* Plaintiff was disciplined for failing to secure her own cash drawer at the end of her shift, an act she knew would violate the company's policy and over which she had control (Doc. No. 33-1, Tr. at 136), whereas her fellow employee was simply not diligent in mitigating the loss due to an illegal act of a customer.

Plaintiff testified she was unaware of any other employee who had left his or her drawer unsecured and been retained (Doc. No. 33-1, Tr. at 187). The only record evidence even resembling Plaintiff's conduct is Camacho's statement she "used to always leave the 'new drawer' out under the register. It wasn't until after Paula had been fired that they (the managers) told me to start putting the drawer in the register" (Doc. No. 40, at 9). However, Plaintiff testified she and all her co-workers regularly left "new" drawers out behind the counter for incoming shifts because it was what they were trained to do (Doc. No. 33-1, Tr. at 184). Plaintiff, however, was not terminated for leaving a "new

7

drawer" out on the counter; she was terminated for leaving an uncounted drawer with an unknown amount of cash unsecured at the conclusion of her shift, an act she admitted was never acceptable (Doc. No. 33-1, Tr. at 186–87).

Plaintiff did not identify another employee who engaged in acts of comparable seriousness and, therefore, failed to make out a *prima facie* case of wrongful discharge.

## CONCLUSION

For the foregoing reasons, this Court adopts the recommendation of the Magistrate and Defendant's Motion for Summary Judgment (Doc. No. 32) is granted.

IT IS SO ORDERED.

       s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 30, 2011